Daniel Becker, J.
This rather unique claim arises out of the alleged conversion by the State of a certain mastodon skeleton, unearthed on land allegedly owned by the claimant.
Claimant was the fee owner of certain property in the Town of Montgomery, Orange County, New York . The State pursuant to subdivision 5 of section 30 of the Highway Law filed a certain map in the office of the Secretary of State on July 5,1967, appropriating certain lands which were to be used in the construction of a portion of Interstate Route 84. The State through its contractors entered upon claimant’s property sometime prior to April 23,1968. On April 23,1968, while excavating a portion of subject property, the contractor unearthed the skeleton of a mastodon which had met its demise at this spot untold thousands of years ago. There is some indication that the remains of this once proud mammal date back approximately 10,000 years.
Claimant alleges that the State by its agents, servants and/or employees removed the said bones from the land without permission or authority, willfully, illegally and unlawfully. It contends that the State has failed to respond to its repeated demands for the return of the bones. Consequently it filed a notice of intention to file the within claim on July 19, 1968. The claim herein was timely filed on April 17, 1970 and has not been *346 assigned, or submitted to any other court or tribunal for audit •or determination.
The court finds that this action sounds in tort for the alleged wrongful and unlawful conversion by the State of this skeleton.
In a companion claim filed on July 31,1969 for the appropriation of the land only, Judge Gustave Rosenberg of this court found that a de facto appropriation occurred on April 23, 1968. Thereafter he determined the value of the land as of April 23, 1968. (See Hunterfly Realty Corp. v. State of New York, Claim No. 51303.) The Appellate Division, Third Department, affirmed this finding on March 15,1973. (41 AD 2d 795.)
The State contends that by reason of the de facto appropriation, now settled to have occurred on April 23, 1968 (the date the bones were unearthed), the State had title to the fossil skeleton. They contend that any question with regard to who owned the land is res judicata by reason of the decisions above. Therefore, they contend that since they owned the land they owned the fossil in the land. Subdivision 4 of section 80 (Defiitions) of the Public Lands Law states: “ 4. ‘ State lands ’ means all lands now or hereafter owned by the state of New York except lands in the forest preserve as defined by section sixty-three of the conservation law.”
Section 81 of the Public Lands Law states :
“ 1. The following minerals are the property of the people of the state of New York in their right of sovereignty:
“ (a) All deposits of gold and silver in or upon private lands and lands belonging to the state heretofore or hereafter discovered within this state.
“ (b) All deposits of minerals and fossils heretofore or hereafter discovered in or upon any lands belonging to the people of the state of New York.”
The State contends that the fossil remains should be treated as other mineral assets and be valued as an enhancement to raw acreage. This would mean that any value these remains had should have been litigated in the trial which dealt with the appropriation of the land. By claimant not claiming a value for these fossil remains at the trial of the first claim, the State argues that claimant waived its right to press this claim. The State points to the following language in the decision of the Appellate Division (41 AD 2d 795) in support of its contention: ‘‘ Monetarily the claimant has received everything it is entitled to and does not contend otherwise. ’ ’
It is clear that at a time no later than April 23,1968 there was a de facto appropriation. The State entered upon and took *347 possession of the land which entombed this massive prehistoric animal. However, title to the property did not vest in the State until the date on which the maps were filed in the County Clerk’s office, which was no earlier than May 13, 1968 and no later than August 6, 1968. (Highway Law, § 30, subd. 6.) Consequently, this court finds that on April 23, 1968 claimant still held title to the lands in question. The State under the statutory scheme of section 30 of the Highway Law could merely enter upon and possess the property after it filed its maps with the Secretary of State. Clearly, this is to enable the expeditious completion of the project. Further, the constitutional rights of the owner are protected when there is an early entry and thereafter followed by a formal vesting of title under subdivision 6 of section 30 of the Highway Law, since the date of early entry becomes the date on which the property’s value is determined. However, the filing of the map in the County Clerk’s office vests title in the State and the appropriation is then complete. (Zember v. State of New York, 5 Misc 2d 216.)
Since the State did not have title to the property on April 23, 1968, section 81 of the Public Lands Law is not applicable and the State’s reliance upon this statute is misplaced.
Further, this fossil was not of the same nature as a mineral asset discovered upon or within the lands of another and it did not enhance the raw acreage value of this property. Bather, it was property of a personal nature buried in the lands of the claimant. Therefore, since claimant was the owner of the real property on April 23, 1968, the court finds that it also owned the skeleton which lay beneath these lands. (See Burdick v. Chesebrough, 94 App. Div. 532.)
The court finds that the decision of the Appellate Division in Hunterfly Realty Corp. v. State of York (supra) did nothing more than to resolve the date of valuation for the purpose of computing damages to subject property for the appropriation of the land. .To argue that the language of the Appellate Court should be construed to mean that the award for the appropriation of the land was to include the value of the bones would be a distortion of the language. The sole issue before the Appellate Division was the date of valuation for, and damages to, the land appropriated. It did not in any way rule upon the claim presently before this court for conversion. The Attorney-General’s argument with regard to this point is not well taken. The fossil skeleton involved herein is property, personal in nature, for which no compensation may be awarded in an appropriation proceeding. (Marraro v. State of New York, 12 N Y 2d 285, 291.)
*348 Finally, with regard to the Attorney-Greneral’s argument that claimant is entitled to one day in court for one cause of action and cannot split its causes of action, the court does not agree. In the case at bar there arose two separate, distinct and independent causes of action by reason of the State’s action, one' for the appropriation of claimant’s land, the other for conversion of the mastodon. Consequently, the judgment in the first Hunterfly action is not res judicata in this action. (Secor v. Sturgis, 16 N. Y. 548, 554.) In cases such as the one at bar, one act may give rise to two separate, distinct and independent causes of action without doing violence to the rule against splitting causes of action. (See Reilly v. Sicilian Asphalt Paving Co., 170 N. Y. 40.) The award of damages for the appropriation did not merge a separate action for conversion which arose out of the same act.
By consent of the parties this claim was tried only on the question of liability.
The court concludes that the claimant is entitled to be compensated for the value of the fossil remains of the mastodon converted by the State on April 23,1968.
All motions previously made herein and not heretofore passed upon are now denied.
This case is now restored to the calendar of the Poughkeepsie District for trial on the issue of damages.